In our fourth case today, we have Mr. De La O et al. versus the Attorney General Garland. Mr. Ritchie? Good afternoon, Your Honor. Good to have you with us, Mr. Ritchie. Thank you. Good to be here. You may proceed. Thank you. May it please the Court, my name is Ronald D. Ritchie. I'm here on behalf of the petitioners. The petitioners, in this case, did establish the nexus to the harm or persecution that they suffered due to their family membership. The first thing that they suffered is when the lead petitioner, I'll call him the father, because there's a father and son here in this case, the father went with his brother, Josue, to meet with the gang, MS-13, and requested that they meet. They went and met, and the gang forced them to take off their clothes to check to see if they had the other gang's tattoos or any kind of marks on their body, and threatened them to not do certain things. You have an argument here that the agency mischaracterized this particular social group. It's kind of hard to follow, because when I look at the transcript of what was actually said in the formulation of understanding this group, it looks like, to me, counsel got a lot of help from the IJL in terms of formulating this group, and so ultimately what was agreed upon, or set forth, the counsel for your client basically designated this as the group. So why should we now look behind that and say, no, this is a mischaracterization? Yes, your honor, Judge Wynn, in this case, well, I think we get some guidance from the case wherein this court held that the Refugee Act is to be applied, and there's supposed to be guidance, and it's really a joint concerted effort, if you will. The judge, counsel, if there is counsel for the asylum applicant, and the DHS attorney, they should work together to try to come up with a PSG, a particular social group that's cognizable. In this case, the counsel for the petitioners put forth at least two particular social groups we believe are cognizable, the first one being familial relationship, the second one relationship with his brother that's pertaining to, of course, the lead petitioner. The judge then further questioned that and stated that he didn't believe that would be cognizable, claimed that it was circular, and so then it came to the third PSG of the family members of those persecuted by gang members. Then before the board, a similar PSG was put forward, familial relationship to petitioner's brother, again relating to the lead petitioner. The board has held that it can consider PSGs that are slightly different, that if there is a variation in what was put forth before, as long as the facts are similar and the facts would support any of those PSGs and they're not substantially different. So counsel, let's just, for the sake of discussion, say that there was something that was wrong done with the identification of the group. And let's say, for the sake of discussion, there was an error on the nexus. For asylum and withholding, you have to show that the government was unable or is unable or unwilling to control in a way that avoids the persecution. And for CAT, you've got to show government acquiescence and the VA lists a number of it relied on to show that requirement, which is a requirement independent of the other issues wasn't met. They talked about how your client stayed in another city in El Salvador for about three weeks without incident. Talks about how other family members remained in El Salvador after your client left the country without being harmed. Even if we were to agree with you on the other grounds, how does that, how is that an error that we could, you know, remand and isn't that an independent basis for denying the petition? It could be an independent one, yes, Your Honor, because it's a separate issue. But our position is that in this case, there was past persecution to the petitioner. And therefore, the burden was shifted to the government to show there's been a change in country conditions such that they could return. Or they could relocate somewhere safely. And the agency found that was the case based on the fact that your client moved to a different area and remained there, you know, without incident. We get these cases and lots of times people try to leave and, you know, the gangs are so the agency made that finding. I mean, I get it, the burden made a shift. But why is that not, you know, proper to say they satisfied it? Well, for at least two reasons, Your Honor. Excuse me. One is petitioners moved, relocated, if you will, and they were only at that new place for a few days. I believe it was less than 10 days. Excuse me. The BIA says about three weeks. I believe that the testimony says something different, Your Honor, but I could be wrong on that. And you may be right on that. I don't know. Excuse me. So that would be one argument is that, you know, a brief time of not being killed or harmed by the gangs is not sufficient time, even 30 days, because the gangs, you know, they coordinate, they cooperate throughout the country of El Salvador, they're throughout their countrywide. And so it, you know, it's understandable, it's reasonable that they can't, you know, contact another one of their partners in crime, if you will, in some other location within 30 days. It may take them a few months. This court has held in a case, President, that if a person goes and they're, even if they're a few months, maybe even longer in their country, and they're in hiding, which we believe was the case here, then that's not, you know, that's not sufficient for the government to say, okay, well, then it's safe for you. And, you know, I would note that the government is arguing that you raise, you know, the cat claim. They're arguing, well, you know, yeah, they moved for a few days to another location, nothing happened to them. And then the BI stated, look, you have the government of El Salvador has taken a few steps. Okay, they've set up some laws to go after the gang members. They've set up apparatus. But setting up, you know, establishing laws, setting up an apparatus does not equate to taking actual action to be able to protect individuals that the government has a responsibility to protect. It has the obligation to protect its citizens. Isn't that inconsistent with acquiescence? No, no. Setting up procedures to protect people from gangs is not inconsistent with acquiescence. Well, that shows that the government is taking steps. So it would be, Your Honor, but that's why we have also in the standard, you know, if the government is turning a blind eye, okay, to what's going on. And we would argue that there's, you know, there's, if you will, two components to that. One is, you know, what steps is the government taking? Is it taking realistic, reasonable steps to try to prevent that from happening? Or is it, or because as a testimony and the objective evidence showed that you have a lot of corruption within the ranks in the government and the police force in El Salvador. And the petitioner, the lead petitioner testified that he had even heard or seen on the news about how the gang members and the police were sometimes involved together in El Salvador. So the government is turning a blind eye, okay. It's consenting, it's allowing this activity to go on, this gang activity. If it's not taking concrete, reasonable steps to prevent this gang criminal activity to continue. And we don't believe that the evidence supports the agency's analysis and decision in this regard. I would note that this case is, does have similarities to the Crispin case. Not only because of the nexus, but also the family-based components. And there's also, you know, there's a Hernandez-Avalos v. Lynch case and the Rita-Darrius v. Wilkinson and the Portillo-Flores cases that we believe are similar to this case. And that one central reason why petitioners were threatened and harmed was due to their familiar relationship. There's also the component, there's opposition to the gangs. As the lead petitioner had told the gang members, hey, leave my brother alone, stop trying to force him to join. And the gang was not happy with that. And that's why they took the actions that they did to kill the lead petitioner's brother. Then after, and this goes back to Your Honor, Quattlebaum's question about, well, they moved to another area. Well, most, you know, much of the harm took place after the death of the brother, Jose. You know, the threats from the gang to the family, they happened after that. So that's why we believe that those facts support the petitioner's claim. And, you know, and the gang said to a sister of the lead petitioner, who was in the United States, contacted her and told her, hey, if you don't, if your family doesn't do what we're telling you that you need to do, you're going to continue crying, which was implicit that they had already, they were crying and mourning because of the loss of Jose, their family member. And, you know, they're next. This is similar again to the Cressman case in that regard. I will set, let's ask further questions for a rebuttal. Thank you. Thank you very much. Ms. McKinney. Yes. Good morning. May it please the court. I represent the Attorney General Merrick Garland in this matter. Your Honors, this petition for review should be denied. Petitioners propose particular social group, family members of those persecuted by gangs is not cognizable as they conceded before the board. This group is circularly defined by the harm. It therefore does not meet the anti-circularity requirement identified by the board in matter of WGR and cited by this court in Amaya. This requirement assures that the nexus requirement is kept separate. Therefore, this group is not cognizable. Second, the agency correctly declined to consider a new group proposed on appeal to the board, family relationship to petitioner's brother. The petition initially state a particular proposed social group based on family status. There's an entire exchange that goes on for about three pages in the record which reflects the immigration judges attempts to get petitioners counsel to exactly delineate the group. And that's a requirement for particular social groups. That's been long recognized by the board in matter of AT which is in 2009 and then in again in WYC and HOB. And that was discussed at length also in this court's Amaya decision. There's a requirement that before the judge you have to exactly delineate your proposed group. And this exchange that goes on for at least three pages, it shows the judge's attempts to get petitioners counsel to identify that group so the judge knows what group the judge is considering both in terms of cognizability but also everything else in the record that you're identifying appropriate facts for this group to analyze it. I mean it's an interesting kind of exchange. I've spent some time with it and it doesn't look like the judge, immigration judge, is trying to you know coerce or move it in any direction. I think Judge Wynn's right. The initial thing they said was family members of, you know, I think the cousin, I don't remember. And then he says you know is that your group and that the council it seems to you know change. It's just kind of an odd situation where they said one thing and would really add up insinuation that what you did before might be wrong or problematic. They go to one that's worse for. So your honor, I would agree that there was no insinuation on the judge's part that the prior group was wrong or that it was a prior group. If you look at the exchange, the immigration judge is asking, so how would you articulate your group? And the response is he was persecuted on account of his relationship with his brother, which that's essentially listing the requirements of the INA. And the judge's response was well that goes to the facts. We go to nexus and then the judge says but are you specifically formulating your group? And then the judge asks do you mean family members of whatever the name of the brother is? So the judge specifically asked is that your group? So I know what group to analyze. It's confusing but even if you go there, except that is the group, you have the issues of nexus that's there and other issues in the case too. Why don't you speak to those? Speak to nexus, yes. So should the court reach the nexus issue because cognizability is dispositive of asylum withholding, nexus is as well. So the court can also go to that issue, should go to that issue. And in this case the government argues that substantial evidence supports the conclusion that the petitioners did not establish a nexus to a protected ground. And the government acknowledges and did acknowledge it in the response brief that there are several cases from this court where this court has found a nexus to a family-based social group. Those cases would be Hernandez, Arita, Portillo. And the government is arguing that this case the facts are distinguishable for several reasons. Here the petitioners, neither petitioner were directly threatened and that's something that existed in those other cases cited in the government's brief, direct threats. In all of those cases there was some sort of tie to the family relationship. Here the two calls to the family members didn't specifically reference the family relationship. So that would distinguish it from, for example, that's who they called. They called a family member, they didn't specifically reference. They didn't say I'm calling you because you're the family member, but that's a kind of fine line. I mean they could have called anyone else. They didn't call, there's no evidence they called neighbors and these two. The only people that they called were family members and you can say what you will about our nexus requirements. It's a fairly lenient way of showing nexus as we've put out in many cases. I mean some of which I may have disagreed with, but that's our wall and we're bound by it. So in response to that I would point to the Hernandez case and there there were multiple, I think there were three instances of threats made and the court was distinguishing even though they were made to the same person which was the mother of her son that the gangs were attempting to recruit. There was a separate instance in that case also where I believe it was a cousin who had been murdered and the applicant there had also identified the body there and the court made a distinction between the two calls that were specifically referencing the son and recruitment and dropped a footnote in that case that it might be different if the court was dealing solely with a different call that had to pertain with the status of that individual that that third threat didn't reference the family ties and so that would distinguish it from for example Portillo. There the applicant had been beaten and each beating they were referencing the family member. In Arritas in that case it was threats that the case concerned and there the written threats referenced the family member and again tied it to efforts to get in that case it was the husband, the family member was the husband, to come back to the home country. So the government would argue that in this case the facts are different with respect to nexus that weren't direct threats. They don't specifically mention the family relationship and the third reason that would distinguish it in this case would be that we have similarly situated family members who presumably would belong to the proposed social group also family members of the brother Josue that are that remain in the home country safely specifically noting the father for example that remains in San Salvador and when asked in during the proceedings if the father had been approached harmed or threatened and the answer was no. So the government would argue that with respect to nexus those facts distinguish this case and that even if this court perhaps when looking at it themselves if they were the fact finder that maybe perhaps you might go one way or the other but certainly the evidence isn't compelling a conclusion of nexus here. Additionally and I think this is something that Judge Quattlebaum already noted that we have a different a separate additional determination regarding relocation and the ability to relocate. In this case the petitioners would have to show that it would be unreasonable for them to relocate which they did for three weeks safely prior to leaving their homeland and similarly situated family members have been able to do. I noticed that there was somewhat of a discrepancy I guess with the testimony that it was a few days the three weeks that I do think is what the the board is citing comes from the affidavit that says we left on I believe March 18th which would have been a little more than three weeks I think from the I believe that the death certificate of the brother is dated from February I believe end of February so that three weeks plus or minus and March 18th is also the date cited by the immigration judge. So the government would urge the court to affirm the agency's denial of asylum and withholding on those basis. Turning to cap protection this court should also affirm the denial of cap protection because the record doesn't compel the conclusion that petitioners more likely than not will face torture if returned to their homeland by or with government acquiescence. In this case the record reflects that neither the petitioners nor their family members reported the extortionist threats to the police and while they correctly note that they're not required to in order to show wolf of blindness they still must show government acquiescence. So it's one component of the evidence in this record. Secondly with respect to the assertion that the authorities would be willfully blind to threats or violence the petitioner's own experiences contradict that here. Here on this record the petitioner was twice arrested when he was accused in 2005 of threatening a neighbor he was arrested and released. I read that how does I mean what we what what the claim here is that they're gang members who are persecuting and the issue here is whether gang members are essentially allowed to run wild in this country. The claim is not that all criminal act yet all law enforcement is suspended and as I understand it his criminal activity and the you know charges that he faced from that didn't have anything to do with I didn't really see how that related here. So I do believe that when the board is referencing that they're referencing an argument made in the brief to the board that the authorities were not responsive to claims of crime and violence. So it is responsive to that I believe that the allegation in 2005 was threats and the 2011 allegation was actually a murder allegation. So the board's statement of that was just showing that the authorities were responsive to allegations of crime and violence but I do take the point that this might be different if if we need to hone in on to the issue would the government be willfully blind to gang violence. But we do have a response to that from the agency as well as the immigration judge noted the authorities had taken action to address gang violence. The president had authorized the use of military force in conjunction with the police to address gang violence. The second example cited by the immigration judge was the creation of a fast reaction force between the police and the military to deal with violence including gang violence. I just wanted to add to that I read in the country reports here I also note the crime and safety reports at page 119 in the record also note that the country has established an anti-extortion task force. So that would be relevant here I mean although acknowledging that wasn't cited as one of the two examples that the immigration judge did but it's just additional looking at the record as a whole additional evidence that the Salvadoran authorities wouldn't be willfully blind in this instance to gang violence. So unless the court has further questions the government would request that the court deny the petition for review. Thank you very much Ms. McKinney. We appreciate it. Mr. Ritchie. Thank you. Just briefly this court reviews the element of nexus at de novo and that's found in several cases including Perez-Vazquez and Cruz versus Sessions. It's difficult for me to comprehend how the government can say there's not direct threats to the petitioners and as Judge Cuadro-Bell pointed out I mean these calls were not made to neighbors or people down the street or some other place they were made directly to the family members. And for example one was the sister of the lead petitioner who was in the United States. The gang knew all about this family. The gang had grown up in the same area as his family. They knew him. They knew the lead petitioner when he came with his brother Josue to meet with the gangs. Gangs were aware of this family. They were aware of the family members. That's how and they're able the gang is able to reach out its tentacles if you will all the way to the United States to contact the sister and threaten the family. The government talks about well there's evidence the record about that the government of El Salvador is saying that the military is getting involved and this and that but there's nothing to show that the government is taking steps to stop or reduce at least reduce corruption and impunity within the ranks of the police force in El Salvador among others. And so that's significant when it comes to you know does the government turn a blind eye to the corruption and the fact that its police officers act with impunity and that they cooperate with the gangs. And therefore the government we believe that we have demonstrated that the government does turn a blind eye to what's going on the gangs and also about again and this has already been pointed out by your honors that that whatever issues the lead petitioner had with with the police in El Salvador had nothing to do with the gangs. He was never charged with being a member of the gangs. He was not arrested for that. So you know if the government is going and arresting people and put you know detaining them for months I think he was detained like six months and then charges were all dismissed. That doesn't show that the government's going after gang members because that's what the issue is here gang members. That's who threatened the petitioners. Unless there's any further questions I will have a seat. Thank you very much Mr. Ritchie. Thank you. We appreciate it. We'll come down and re-counsel but before that the clerk will adjourn the court. Signed and Died. This honor request stands adjourned. Signed and Died. God save the United States and this honorable court.
judges: Robert B. King, James Andrew Wynn, A. Marvin Quattlebaum Jr.